**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PATRICK THELEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-01015-MJR |
| | ) | |
| LISA GREGORY, | ) | |
| DOUGLAS A. KRUSE, | ) | |
| K. SCHNEIDER, | ) | |
| E. MILLS, | ) | |
| R. GILLIAN, | ) | |
| J. MATT HARDIN, | ) | |
| J. CROSS, | ) | |
| R. ESQUIBEL, | ) | |
| PAUL M. LAIRD, and | ) | |
| ANN BOWEN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Patrick Thelen is currently incarcerated at the Federal Correctional Institution at Greenville, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Thelen has filed a civil rights action pursuant to 42 U.S.C. § 1331, alleging that prison officials at Greenville and beyond improperly treated an infection on his penis from November 2014 to the present. (*Id.* at 1.) Thelen seeks compensatory damages, punitive damages, and injunctive relief. (*Id.* at 23.)

This matter is now before the Court for a preliminary review of Thelen's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if

the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

Thelen has been incarcerated at Greenville since January 1998.  (*Id.* at 5.)  In November 2014, Thelen noticed a small red spot on the tip of his penis, and he saw Schneider, a physician's assistant at the prison, concerning the problem.  (*Id.*)  Schneider took a "wait and see" approach and evidently did not provide any prescriptions for Thelen's issue at that time.  (*Id.*)  By December 8, 2014, the spot had worsened, so Thelen went to sick call and was seen by Mills, another physician's assistant at the prison.  (*Id.*)  She prescribed him an antibiotic consisting of sulfamethoxazole and trimethoprim and sent Thelen on his way.  (*Id.*)  Approximately one month later, there was no improvement, so Thelen again went to sick call and was seen by Schneider. (*Id.*)  She prescribed him nystatin cream, an antifungal medication, but refused to conduct any "skin test."  (*Id.*)  By January 26, 2015, Thelen's infection had not improved, so he saw Schneider again, who repeated nystatin cream but did not conduct any testing.  (*Id.*)

As of February 3, 2015, Thelen's penis problem had worsened, and he had also developed some nausea and stomach pain.  (*Id.*)  He saw Mills on that date, who gave him omeprazole.  (*Id.*)  He went to sick call again on February 23, 2015 concerning general malaise and his worsening penis issue, and Mills ordered a celiac test and an ultrasound but no "test for [his] penis infection."  (*Id.*)  Thelen returned to sick call again throughout March 2015:  on one occasion Mills saw him and denied "skin tests" on his penis, and on two others she turned him away without care.  (*Id.* at 6.)  On April 1, 2015, Thelen had a guard call medical because of his worsening symptoms, and requested to see Dr. Kruse.  (*Id.*)  Dr. Kruse refused to see him.  (*Id.*) That same day, Thelen spoke with Gillian, the Assistant Health Services Administrator at the

prison.  (*Id.*)  He asked for help regarding his "worsening infection," but Gillian allegedly turned

him away.  (*Id.*)  The next day, Thelen went to sick call and demanded to see a doctor; after

some effort, he was seen by Dr. Harvey, who diagnosed his infection "as fungal for the first

time," and prescribed clotrimazole cream (an anti-fungal medication).  (*Id.*)

Thelen's penis-related plight continued throughout April and early May 2015.  (*Id.* at 7.)

On April 13, 2015, he went to sick call and was seen by Dr. Kruse, who prescribed him

ketoconazole (an anti-fungal) and ordered blood tests.  (*Id.*)  Two days later, Thelen was placed

in the prison's Special Housing Unit, and his clotrimazole was discontinued.  (*Id.*)  On April 20,

2015, Dr. Kruse saw plaintiff in the Special Housing Unit and agreed with Harvey's diagnosis

that Thelen suffered from a fungal infection on his penis.  (*Id.*)  He prescribed bacitracin and

considered referring Thelen to a dermatologist, but would not conduct any "skin tests."  (*Id.*)  In

early May, Thelen sent Kruse a note requesting skin testing and blood work, but Kruse refused to

conduct that testing.  (*Id.* at 8.)  On May 7, 2015, Thelen saw Kruse again, who took pictures of

his infection but refused any "fungal tests and liver function tests."  (*Id.*)  On May 12, 2015,

Thelen saw Mills, who ordered a blood profile but no fungal testing.  (*Id.*)  Mills told Thelen that

staff had sent his records to Hardin, a dermatologist, and was waiting for a response.  (*Id.*)

Things did not improve for Thelen during mid- to late-May 2015.  (*Id.*)  On May 18,

2015, he spoke with Bowen, a nurse at the prison, asking for help for his penis issue.  (*Id.*)  She

told him to sign up for sick call.  (*Id.*)  On May 19, 2015, he went to sick call as instructed and

was seen by Mills, who told Thelen that they were still waiting on the dermatologist to respond.

(*Id.*)  Mills told him that she would email the dermatologist to follow up.  (*Id.*)  Thelen also

spoke with Bowen that day, who said she would speak with Mills further about his condition.

(*Id.*)  On May 21, 2015, Thelen went to medical – Schneider greeted him at the doorway and told

him that the dermatologist had been on vacation and was reviewing charts in the order that they were submitted. (*Id.*) That same day, seemingly unhappy with Schneider, Thelen sent Kruse a note complaining that he had not been treated with medication "in 9 days," and sent Assistant Warden Lloyd a note asking him to intervene in Thelen's medical care. (*Id.*) The next day, Thelen asked his "lawyer brother," Jim Thelen, to email Gregory, the Regional Medical Director over Greenville and other prisons. (*Id.* at 9.) Jim requested that Gregory "intervene" to get Thelen "help with his worsening fungal infection." (*Id.*) The email was acknowledged but "no response was forthcoming." (*Id.*) At the same time, Jim emailed Dr. Kruse about Thelen's treatment, but Kruse said that he could not discuss Thelen's case absent Thelen's consent. (*Id.*) On May 24, 2015, Thelen sent notes to Schneider, Mills, and Kruse, advising that the infection was getting worse and that he was experiencing red itchy skin. (*Id.*) Two days later, Thelen was seen by Mills and Bowen; Mills said she would try to obtain more ketoconazole, and that she still had not heard back from Hardin. (*Id.*) On May 27, 2015, Hardin prescribed clotrimazole and a steroid cream, but no one at "medical informed" Thelen of the orders. (*Id.* at 10.)

On June 1, 2015, Thelen spoke with Pollman, the Health Services Administrator at Greenville. (*Id.*) Pollman told Thelen that prison staff were looking into fungal testing and medication, but that Thelen should "not sign up for sick call" and should wait for medical staff to call him. (*Id.*) Schneider called Thelen to medical the next day, and Thelen was told of Hardin's prescription for clotrimazole. (*Id.*) Thelen said that he had tried that medication before but it had no effect on his infection. (*Id.*) On June 4, Thelen was put back on clotrimazole and a steroid cream by Hardin. (*Id.* at 11.) About two weeks later, his fungal infection was still worsening, so he tried to see Mills at sick call; Mills turned him away and said that she would contact him later that same week about his ailment. (*Id.*) Mills summoned Thelen to medical

three days later; she took pictures of his fungal infection, but denied Thelen's request "for fungal testing to determine what strain it was and proper treatment." (*Id.*)  Schneider told Thelen that he did not have a fungal infection and that she would wait for additional input from Hardin. (*Id.*)  Thelen asked to speak to Hardin directly, but was told that was probably not possible. (*Id.*)  Thelen returned to sick call on June 26, 2015, leading Mills to try another antifungal. (*Id.*)

On July 6, 2015, Thelen was seen by Kruse, who refused Thelen's request to see a dermatologist and again prescribed clotrimazole. (*Id.* at 12.)  Three days later, Thelen was called to medical by Schneider, who told Thelen that he had psoriasis and would "just have to live with it." (*Id.*)  On July 14, 2015, Thelen spoke with Bowen, asking her to intervene to get Thelen help with his worsening infection. (*Id.*)  Bowen said there was nothing she could do and that Thelen would need to sign up for sick call. (*Id.*)  Three days later, Thelen saw Schneider again, who denied Thelen's request for a fungal test, denied that Thelen suffered from a fungal infection, and told him that he would have to "live with" the problem. (*Id.*)  On July 23, 2015, Thelen spoke with Assistant Warden Esquibel. (*Id.*)  Esquibel told Thelen that she had reviewed his medical issues and took Thelen to see Gillian. (*Id.* at 13.)  Gillian, in turn, told Thelen that he was being treated by a dermatologist and that Gillian would not intervene. (*Id.*)  On July 24, 2015, Thelen saw Kelley, a nurse at Greenville, who took pictures of his infection and told Thelen that use of clotrimazole was fine so long as his blood was periodically tested. (*Id.*)

On August 13, 2015, Schneider summoned Thelen to medical, seeking to up his dosage of an anti-depressant for a headache. (*Id.* at 14.)  Thelen told Schneider that he was not depressed but was concerned with the infection on his penis. (*Id.*)  Schneider refused to look at the infection and surmised that Thelen had "Lichen Planus," not a fungal infection, and that Thelen would have to "live with" it. (*Id.*)  Four days later, Thelen saw Mills, who ordered

ketoconazole, but the dosage was denied by the prison's central office.  (*Id.*)  On August 20, 2015, Thelen saw Schneider, who took pictures and again surmised that Thelen's problem was not fungal.  (*Id.*)  She took a swab to check for a bacterial infection and told Thelen that Dr. Kruse had put Thelen in to see a dermatologist, but that it would "take a long time to get there." (*Id.*)  On August 27, 2015, Thelen went to medical but Schneider refused to see him.  (*Id.* at 15.)

On September 2, 2015, Schneider called Thelen to medical, informed him the swab tested positive for a "staff" infection, and prescribed him a combination antibiotic as treatment.  (*Id.*) She told him that this was a "secondary infection" to Thelen's original problem, and said that he was already put in for a dermatologist consult but that "would take a long time."  (*Id.*)  On September 4, 2015, Thelen spoke with Gillian, saying that his infection still had not improved and asking for an immediate referral to a dermatologist.  (*Id.* at 17.)  Gillian said that he would have pictures taken and that he would look into Thelen's status, but nothing happened.  (*Id.* at 18.)  As of September 13, 2015, Thelen says he still has an infection, that the long-term infection has caused skin and nerve damage, and that he has not once been tested to determine if his infection is fungal.  (*Id.*)  Thelen insists that he filed a grievance concerning his care, and that he has "exhausted all remedies as required by prison policy and statute."  (*Id.* at 4.)

On September 15, 2015, Thelen filed a civil rights complaint concerning his medical issues, along with a motion seeking emergency preliminary injunctive relief.  (Doc. 1 & Doc. 3.)

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Thelen's *pro se* complaint into numbered counts, as shown below.  The parties and

the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Gregory, Kruse, Schneider, Mills, Gillian, Hardin, Cross, Esquibel, Laird, and Bowen are liable under *Bivens* in their individual capacities for delaying or denying Thelen medical care, failing to intervene in his care, providing care that was grossly inadequate, repeating treatment that was already found to be ineffective, or delaying a referral to a specialist.

**COUNT 2:** Gregory, Kruse, Schneider, Mills, Gillian, Hardin, Cross, Esquibel, Laird, and Bowen are liable in their official capacities for injunctive relief related to Thelen's ongoing medical care.

**COUNT 3:** Gregory, Kruse, Schneider, Mills, Gillian, Hardin, Cross, Esquibel, Laird, and Bowen violated 18 U.S.C. § 4042 by providing medical care that was inconsistent with the obligations of that statute.

**COUNT 4:** Schneider, Kruse, and Mills retaliated against Thelen for filing grievances about his medical care by putting him last in the sick call line, forcing him to go to "pill line" for his medications, and refusing him testing.

**COUNT 5:** Hardin violated Illinois telemedicine law when he provided telephonic care concerning Thelen and Kruse aided and abetted that conduct.

The Court will begin with Thelen's claim under *Bivens* that various officials violated the Eighth Amendment concerning the care for his penis infection (**Count 1**). To put forth a viable medical claim, Thelen must allege that officials were "deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). This claim involves a two-part inquiry: Thelen must first allege that his condition "was objectively serious," and must then allege that "state officials acted with deliberate indifference" to that condition. *Id.*

For screening purposes, Thelen has alleged the existence of an objectively serious condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).

Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Thelen's infection arguably qualifies as serious, which is enough for screening purposes.

While it is a much closer question, Thelen's complaint also alleges deliberate indifference by the treating defendants concerning his medical care, at least for purposes of screening review. Thelen should know that "medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). In this vein, allegations from a prisoner claiming that he is dissatisfied with his treatment or that he is upset that his condition has not been cured do not rise to the level of deliberate indifference, as the Constitution does not guarantee a specific type of treatment or a cure. *Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996). That said, deliberate indifference can be present if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). It can also exist if an official delays proper care, continues with care that has been proven ineffective, or fails to provide proper follow-up. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010). Here, Thelen has alleged that Kruse, Schneider, Mills, Hardin, and Bowen delayed treatment at certain points, provided improper care, persisted in ineffective treatment, or failed to provide follow-up care, and that is just enough to state claims against them. Accordingly, **Count 1** may proceed as to Kruse, Schneider, Mills, Hardin, and Bowen at this early point.

While it is an equally close question, Thelen has also alleged deliberate indifference on the part of some of the supervisory officials.  To be sure, merely alleging that a defendant is liable because he supervised others does not state a claim, as § 1983 "does not authorize supervisory liability."  *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).  That said, a supervisor could be liable if a prisoner advised him of an ongoing problem and the supervisory official failed to assist, depending on the circumstances.  *See*, *e.g.*, *Santiago v. Wells*, 599 F.3d 749, 758-59 (7th Cir. 2010) (grievance informing warden that officers were placing the prisoner in cells with dangerous inmates "sufficient, at the pleading stage, to state a claim" against the warden); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A]n inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate, and, if necessary, to rectify the offending condition.").  Thelen alleges that Gregory, Gillian, and Esquibel knew about his worsening issues but failed to adequately intervene, and that is enough to state an arguable claim against them at this stage.  As such, **Count 1** may proceed as to Gregory, Gillian, and Esquibel.  That said, **Count 1** must be dismissed without prejudice as to Cross and Laird, as Thelen provides next to no information in his complaint as to his correspondence with those individuals, and thus does not put forth the minimal "factual content" necessary to state a claim against them under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  **Count 1** must also be dismissed as to Lloyd, Pollman, and any other individuals not named in Thelen's caption or his list of defendants, as they are not considered parties.  *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendant must be "specif[ied] in the caption").

Over and above his *Bivens* claim in Count 1, Thelen also says he is suing the defendants in their official capacities for injunctive relief related to his ongoing care (**Count 2**).  To the

extent this claim is premised on *Bivens*, it must be dismissed at the gate, as *Bivens* does not permit official capacity suits. *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006). Owing to the fact that the Court must "construe complaints filed by unrepresented prisoners liberally," *Riley v. Kolitwenzew*, 526 F. App'x 653, 658 (7th Cir. 2013), the Court will interpret Thelen as raising claims against the defendants in their official capacities pursuant to the Administrative Procedure Act or the Court's general equitable powers. *See*, *e.g.*, *Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005) (recognizing possible availability of APA challenge to prisoner's medical care); *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002) (no official capacity suit under *Bivens*, but prisoner could attempt an APA claim); *Thomas v. Watts*, No. 2:11-cv-187, 2013 WL 3043686, at *4-5 (S.D. Ind. June 17, 2013) (noting authority of federal court to entertain official capacity medical suits seeking injunctive relief). Accordingly, **Count 2** may proceed against Gregory, Kruse, Schneider, Mills, Gillian, Hardin, Cross, Esquibel, Laird, and Bowen. That said, **Count 2** must be dismissed as to Lloyd, Pollman, and any other individuals not named in Thelen's caption or his list of defendants, as they are not defendants in this action. *Myles*, 416 F.3d at 551–52.

Thelen next alleges that Kruse, Schneider, Mills, Hardin, Bowen, Gregory, Gillian, Cross, Esquibel, and Laird violated 18 U.S.C. § 4042 concerning the provision of care to prisoners (**Count 3**). This claim must be dismissed with prejudice, as § 4042 "does not create a private right of action." *Harper v. Williford*, 96 F.3d 1526, 1527 (D.C. Cir. 1996).[1]

Thelen goes on to claim that Schneider, Kruse, and Mills retaliated against him for pressing grievances about his medical care to higher-level officials: the trio allegedly made

---

[1] The Court does not construe Thelen's complaint as raising a negligence claim under the Federal Tort Claims Act, as he has not named the United States as a defendant and has said nothing about the exhaustion of administrative remedies. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (FTCA claimants must "exhaust[] their administrative remedies."); *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008) ("The only proper defendant in an FTCA action is the United States."). Any FTCA claim should be considered dismissed without prejudice.

Thelen wait longer than other prisoners at sick call and refused Thelen testing for his penis infection as a consequence for "pushing grievances" over that same infection, and Schneider also retaliated by making Thelen use a "pill line" for medications rather than allowing him to carry those medications with him throughout the prison (**Count 4**).  To put forth a retaliation claim, a plaintiff must "plausibly allege" that he "engaged in activity protected by the First Amendment," that he "suffered an adverse action that would likely deter future First Amendment activity," and that the "First Amendment activity was at least a motivating factor in the defendants' decision to retaliate." *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012).  While some of the adverse actions mentioned seem *de minimis*, taking them together, Thelen has stated an arguable retaliation claim for purposes of screening review.  *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).  Accordingly, **Count 4** may proceed as to Schneider, Kruse, and Mills.

As his final claim, Thelen alleges that Hardin violated 225 ILCS 60/49.5 when he provided telemedicine without an Illinois license, and that Kruse aided and abetted that conduct (**Count 5**).  This count must be dismissed for the same reason that Thelen's claim under 18 U.S.C. § 4042 was set aside:  the telemedicine provision that Thelen relies on does not appear to create a private cause of action for damages, but instead states that a person who engages in the practice of telemedicine without a license shall be subject to cease and desist orders from the Department of Financial and Professional Regulation, as well as criminal sanctions and limited license-related injunctive relief brought by parties on behalf of the State of Illinois.  *See* 225 ILL. COMP. STAT. §§ 60/49.5, 60/59, & 60/61.  As such, **Count 5** must be dismissed with prejudice.

One closing note is in order concerning Thelen's request for injunctive relief.  Alongside his complaint, Thelen has filed a motion for an "emergency" preliminary injunction and protective order, claiming that he needs a face-to-face consultation with and treatment from a

dermatologist to treat his penis infection – a condition that is "ravaging" his penis and "continues to worsen." (Doc. 3.)  The Court will construe this motion as a request for a preliminary injunction, and the Court's screening review dictates that Plaintiff's request for preliminary injunctive relief deserves consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's request for a preliminary injunction will be referred to Magistrate Judge Stephen C. Williams, who shall resolve the request and issue a report and recommendation.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **KRUSE**, **SCHNEIDER**, **MILLS**, **HARDIN**, **BOWEN**, **GREGORY**, **GILLIAN**, and **ESQUIBEL**. **COUNT 1** is **DISMISSED without prejudice** as to all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **GREGORY**, **KRUSE**, **SCHNEIDER**, **MILLS**, **GILLIAN**, **HARDIN**, **CROSS**, **ESQUIBEL**, **LAIRD**, and **BOWEN**. **COUNT 2** is **DISMISSED without prejudice** as to all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **SCHNEIDER**, **KRUSE**, and **MILLS**.  **COUNT 4** is **DISMISSED without prejudice** as to all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **GREGORY**, **KRUSE**, **SCHNEIDER**, **MILLS**, **GILLIAN**, **HARDIN**, **CROSS**, **ESQUIBEL**, **LAIRD**, and **BOWEN**; the Clerk shall issue the completed summons.  The United States Marshal **SHALL** serve Defendants **GREGORY**, **KRUSE**, **SCHNEIDER**, **MILLS**, **GILLIAN**, **HARDIN**, **CROSS**, **ESQUIBEL**,

**LAIRD**, and **BOWEN** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[1]  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel.  Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are ordered to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

---

[1]  Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's pending request for preliminary injunctive relief is hereby **REFERRED** to Magistrate Judge Stephen C. Williams, who shall resolve the request for injunctive relief and issue a report and recommendation. The period for filing any objections to Magistrate Judge Williams' report and recommendation shall not exceed 14 days from the date of the report. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also **REFERRED** to Magistrate Judge Williams.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action.

**IT IS SO ORDERED.**

**DATED: September 18, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge Michael J. Reagan**
**United States District Judge**